

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

SANDRA J. ARCHDALE,

Appellant,

v.

SHARYL L. O'DANNE,

Respondent.

)
)
)
)
)
)
)
)
)
)
)

No. 71905-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 6, 2015

SPEARMAN, C.J. — This action arises from a dispute over the ownership of a condominium. Appellant Sandra Archdale appeals the trial court's decision denying her request for quiet title and imposing a constructive trust for the benefit of both appellant and respondent, Sharyl O'Danne. Archdale also appeals the trial court's award of attorney fees and costs to O'Danne. Finding no error, we affirm.

## FACTS

Sandra Archdale and Sharyl O'Danne are sisters. In 2004, Archdale told O'Danne that her marriage was failing and she desired to move out of her marital home. But, according to Archdale, no lender would finance her purchase of a new home in her individual capacity without a quitclaim deed signed by her husband. Because she did not want to involve her husband in the purchase of a property, Archdale asked O'Danne to obtain financing for a condo where she

could live during the separation from her husband and for which she could eventually take title in her own name. Archdale agreed that she would be solely responsible for all costs associated with the purchase of the condo, including the down payment, closing costs, mortgage and other related payments. O'Danne agreed to the request and in August 2004, closed sale on a condo of her sister's choosing. Archdale moved into the condo in October 2004 and continued to live there for the next six years, even though she and her husband eventually reconciled.

Beginning in 2005, Archdale made several requests that O'Danne convey legal title to the condo, which O'Danne refused without a simultaneous pay off or assumption of the underlying mortgage. On June 4, 2010, Archdale initiated this action seeking quiet title to the condo or, in the alternative, a constructive trust requiring O'Danne to immediately convey legal title to her via quitclaim deed, without any further conditions. Archdale also sought money damages, attorney fees and costs. The case proceeded to trial on October 10, 2013.

At trial, it was undisputed that O'Danne was obliged to transfer title to the condo to Archdale. At issue, was whether, under the agreement, O'Danne was obligated to immediately transfer title to the condo to Archdale regardless of the status of the underlying mortgage, as Archdale contended, or whether transfer of the title was contingent on Archdale assuming or paying off the mortgage, as O'Danne asserted.

In her testimony, Archdale conceded that she had assured O'Danne that she would pay off the condo with funds from their mother's estate, which was in

2

probate at the time of the sisters' agreement in 2004. She admitted sending an email regarding the condo to O'Danne on March 26, 2004, in which she promised to "pay it off with the inheritance." Verbatim Report of Proceedings (11/13/13) (VRP) at 144; Exhibit (Ex.) 29. Archdale also acknowledged that her former lawyer had advised her in a letter dated December 3, 2008,[1] that no court would order O'Danne to transfer title until Archdale assumed or paid off the existing mortgage. In the letter, a copy of which was admitted into evidence, Archdale's attorney also noted that O'Danne was holding title for Archdale's benefit, pending payment or satisfaction of the underlying mortgage.

O'Danne testified that there was no specific agreement as to how long she would hold title. She further testified, however, that based on Archdale's March 26, 2004 promise to "pay it off with her inheritance," she understood that she would hold title until the their mother's estate was probated, at which point Archdale would pay off the mortgage on the condo and O'Danne would convey title. O'Danne's deposition testimony, which was consistent with her testimony at trial, was published at trial at Archdale's request.

The trial court found that Archdale "promised to pay off the underlying mortgage with inheritance funds from their mother's pending estate" but "[i]nexplicably, when Archdale received the inheritance funds, she refused to pay off the mortgage. . . ." CP at 5. The court also found that O'Danne "agreed to

---

[1] At trial, defense counsel apparently misspoke and stated the letter was dated November 3, 2008. Review of the record reveals that this letter from Archdale's attorney was dated December 3, 2008.

3

transfer the title to [Archdale] once the mortgage was paid off" and, "[f]or her part[,]...O'Danne has repeatedly stated that she does not intend to retain the subject property and will readily quitclaim it to [O'Danne] as soon as she is no longer liable for the underlying mortgage." Id. The court also found:

> Archdale has paid the mortgage and property taxes on the unit for the past nine years, except for two months during 2012, where she withheld payment causing the bank to begin foreclosure proceedings against her sister. . . . [O'Danne] was forced to pay a total of $1,493.84 to stop the foreclosure proceedings. The payment covered the cost of the two months of mortgage payments and late fees. Archdale admits she has not repaid O'Danne for making those payments.

CP at 5. Based on these findings, the trial court concluded that there was no basis to quiet title in Archdale, but the action was not frivolous and there were equitable grounds for imposing a constructive trust that benefitted both parties.

The trust terms set forth by the court required Archdale and O'Danne to execute a Purchase and Sale Agreement, whereby O'Danne would transfer the condo to Archdale via quitclaim deed, subject to all senior liens and encumbrances, if she received full payment and/or notice of satisfaction of the total outstanding mortgage on or before 5:00 p.m. on May 14, 2014. In the event that Archdale failed to meet this deadline, the trial court granted O'Danne an immediate right of reentry in the condo for purposes of placing it on the open market for sale and ordered her to list the property for sale within thirty days. Finally, the trust provided for the distribution of the proceeds of a sale to a third party. The court ordered that proceeds would be applied first to the outstanding mortgage balance and any remaining taxes, fees, assessments, costs and commissions. Surplus proceeds would then be used to reimburse O'Danne for

$1,493.84 in mortgage payments and late fees she had paid on Archdale's behalf. Any remaining funds would be allocated at 75 percent to Archdale and 25 percent to O'Danne, with O'Danne's share intended as compensation for the use of her credit by Archdale.

On November 20, 2013, the court amended its decision and order, striking its initial conclusion that the lawsuit was not frivolous or brought in violation of CR 11 and reserving ruling on the issue until after consideration of a timely motion for such determination by O'Danne. Subsequently, O'Danne brought a motion for attorney fees and costs pursuant to RCW 4.84.185, which permits such an award to a party who prevails in an action that has been frivolously brought.

On April 4, 2014, the trial court entered findings that O'Danne was the prevailing party in the lawsuit and that "Archdale had no need to resort to litigation or to call upon the equitable powers of the Court because O'Danne was willing without such a lawsuit to convey the condominium to Archdale upon a simultaneous payoff by Archdale of the existing mortgage balance, but Archdale needlessly declined to do so." CP at 16. The court concluded that the lawsuit was frivolous within the meaning of RCW 4.84.185 and that O'Danne was entitled to attorney fees and costs totaling $55,388.91.

On April 18, 2014, the trial court entered corrected findings, *nunc pro tunc* to April 4, 2014, which added a judgment summary to the court's initial findings. On May 5, 2014, the trial court entered a judgment confirming its April 4, 2014 decision and order, as amended, *nunc pro tunc* to April 4, 2014.

Archdale appeals the decision and order, as well as the award of attorney fees and costs to O'Danne.

## DISCUSSION

### I.

Claims for quite title and imposition of a constructive trust are equitable in nature. Durrah v. Wright, 115 Wn. App. 634, 649, 63 P.3d 184 (2003); In re Marriage of Lutz, 74 Wn. App. 356, 366, 873 P.2d 566 (1994). Whether to grant equitable relief is a question of law we review de novo. Niemann v. Vaughn Comm'ty Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005). We review the fashioning of an equitable remedy by the trial court for abuse of discretion. Sorenson v. Pyeatt, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006). Here because it is undisputed that the trial court's grant of equitable relief was proper and Archdale challenges only the nature of the relief granted by the trial court, we review for abuse of discretion. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). To the extent discretion is exercised in reliance upon factual findings, the findings must be supported by substantial evidence. In re Lutz, 74 Wn. App. at 370. "Substantial evidence is 'evidence of a sufficient quantity to persuade a fair-minded rational person of the truth of the declared premise. . . . Even though there may be conflicting evidence on the record, [a reviewing court] will not disturb findings based on substantial evidence." Id. (quoting Henery v. Robinson, 67 Wn. App. 277, 289, 834 P.2d 1091 (1992)).

Archdale contends the trial court abused this discretion when it refused to quiet title in her and, instead, established a constructive trust. We disagree.

The trial court found, on undisputed evidence, that while O'Danne was the "legal owner," of the condo, Archdale had an "equitable interest" therein. The court also found, in paragraph 3 of its decision and order, that:

> The Plaintiff promised to pay off the underlying mortgage with inheritance funds from their mother's pending estate. The Defendant agreed to transfer title to the Plaintiff once the mortgage was paid off. Inexplicably, when Archdale received the inheritance funds, she refused to pay off the mortgage on the subject property...

CP at 5. Although Archdale disputes this finding, it is supported by substantial evidence, including testimony from both parties and written communications between the parties and their attorneys regarding the condo dispute.

The trial court's conclusion that "it was reasonable for the Defendant to refuse to transfer title to the subject property to Archdale, given Archdale's lack of performance in paying off the underlying mortgage as soon as she received her inheritance, as promised," flows logically from its findings in paragraph 3. Likewise, the trial court's conclusion that "title should not be quieted in the Plaintiff" flows from these findings because they establish that Archdale did not have superior title to her sister. CP at 4; see also Finch v. Matthews, 74 Wn.2d 161, 166, 443 P.2d 833 (1968) (explaining that a plaintiff seeking quiet title bears the burden of establishing superior title to his or her opponents). The trial court's refusal to quiet title in Archdale was not an abuse of discretion.

We also find no abuse of discretion with respect to the constructive trust terms imposed by the trial court. Sitting in equity, a court may fashion

7

broad remedies to do substantial justice to the parties and put an end to litigation. Hough v. Stockbridge, 150 Wn.2d 234, 76 P.3d 216 (2003). In this case, the terms of the constructive trust accomplished both ends.

The trial court imposed three material trust terms:

1. If Archdale tendered full payment and/or notice of satisfaction of the total outstanding mortgage amount within six months of the decision and order, O'Danne was required to transfer legal title to the condo to Archdale via quitclaim deed.

2. In the event that Archdale failed to tender full payment and/or notice of satisfaction of the total outstanding mortgage amount within six months of the decision and order, O'Danne's duty to transfer title would cease, she would gain immediate right of re-entry in the condo for the purpose of placing it on the open market, and she would have 30 days to place the condo up for sale.

3. Upon sale of the condo to a third party, the proceeds would be applied first to the outstanding mortgage balance and related costs. If the sale yielded any surplus proceeds, the first $1,493.84 would go to O'Danne "in repayment of late mortgage payments and late fees owed by [Archdale]." CP at 6. After that, 25 percent of the remaining balance would go to O'Danne "as compensation for the use of her credit by [Archdale]" for nine years. Id. The remaining proceeds would go to Archdale.

These terms protected Archdale's equitable interest in the condo by formalizing O'Danne's duty to convey title to Archdale via quitclaim deed. And, although Archdale expressly objected to terms setting a time limit for Archdale's requirement to satisfy the underlying mortgage, authorizing O'Danne to sell the condo while Archdale continued making timely mortgage payments, or apportioning any proceeds of a third party sale to O'Danne, such terms were necessary to protect O'Danne's pecuniary interest as the holder of legal title to the condo. Moreover, by clarifying the parties' respective duties and establishing

enforceable time limits for the parties' fulfillment of these duties, the trust terms ensured the parties would go their separate ways without endless litigation.

We conclude that the equitable remedy fashioned by the trial court was a reasonable exercise of its discretion.

II.

Next, Archdale challenges the trial court's award of attorney fees and costs to O'Danne pursuant to RCW 4.84.185. We review an award of attorney fees under RCW 4.84.185 for abuse of discretion. Alexander v. Sanford, 181 Wn. App. 135, 184, 325 P.3d 341, review denied, __ Wn.2d __, 339 P.3d 634 (2014). Because the trial court has weighed the evidence on this issue, our review is, once again, limited to determining whether the trial court's findings of fact are supported by substantial evidence and, if so, whether the findings support the conclusions of law and the judgment. Sac Downtown Ltd. Partnership v. Kahn, 123 Wn.2d 197, 202, 867 P.2d 605 (1994).

RCW 4.84.185 provides in relevant part:

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause. In no event may such motion be filed more than thirty days after entry of the order.

9

The statute was adopted "to discourage frivolous lawsuits and to compensate the targets of frivolous lawsuits for their fees and costs incurred in defending meritless cases." Timson v. Pierce County Fire Dist. No. 15, 136 Wn. App. 376, 386, 149 P.3d 427 (2006) (citing Kearney v. Kearney, 95 Wn. App. 405, 416, 974 P.2d 872 (1999)). In order for the court to award attorney fees under the statute, three elements must be present: (1) each of the claims or defenses asserted by the opponent of fees must be frivolous, i.e., without basis in fact or law; (2) the claims or defenses must have been advanced without reasonable cause; and (3) the proponent of fees must have prevailed at trial. Alexander, 181 Wn. App. at 184. Each is present in this case.

### The Lawsuit Was Frivolous in its Entirety

In support of the fee award, the trial court found, based on the substantial evidence discussed previously, that Archdale failed to pay off the mortgage on the condo with her inheritance, as promised, and that O'Danne was willing, without a court order, to transfer title upon Archdale's assumption or satisfaction of the underlying mortgage. CP at 13. These findings establish that Archdale had no factual or legal basis for her claim, as stated in her complaint, of an immediate and unconditional right to legal title to the condo. The court's conclusion that Archdale's claims for equitable relief "were frivolous within the meaning of RCW 4.84.185 in that they were advanced without a rational basis in law or fact" flows logically from these findings. Id.

The trial court made no specific findings to justify its conclusion that Archdale's claim for damages was also frivolous. Nevertheless, review of the

record reveals that the conclusion is supported by substantial evidence, as Archdale offered no evidence in support of the claim for damages at trial.

### Archdale's Claims Were Advanced Without Reasonable Cause

Because each of Archdale's claims was frivolous, our inquiry turns to whether they were advanced without reasonable cause. Under Archdale's interpretation of the parties' verbal agreement, she was legally entitled title to the condo, subject to encumbrances of record but without further conditions. Generally, a party may initiate a lawsuit to vindicate reasonably perceived legal rights without fear of adverse consequences under RCW 4.84.185. See, State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 906-07, 969 P.2d 64 (1998) ("litigants should not fear adverse consequences for reasonably seeking to judicially vindicate their perceived legal entitlements. . . . Just because underlying claims are weak is not to say they are frivolous."). However, in this case, Archdale's repeated concessions throughout the trial court proceedings undermined her claim of an immediately enforceable right[2] and none of the non-testamentary evidence supported it.[3] Furthermore, as noted previously, it was never disputed that O'Danne would transfer legal title to Archdale upon Archdale's satisfaction or assumption of the underlying mortgage. Accordingly,

---

[2] In her complaint, Archdale asserted superior title to O'Danne and claimed that, pursuant to RCW 7.28.120, title to the condo should be quieted in her, subject to encumbrances of record but without further conditions. However, at several instances throughout trial and on appeal, Archdale has acknowledged that her right to legal title to the condo was contingent on her assumption or satisfaction of the underlying mortgage.

[3] This evidence included, among other items, an email from Archdale in which she stated she would "pay off with the inheritance" (Exhibit (Ex.) 29) and an email from Archdale's former attorney to Archdale, dated December 3, 2008, which acknowledged that O'Danne was holding title for Archdale's benefit, pending payment or satisfaction of the underlying mortgage. Ex. 32.

we conclude that Archdale did not reasonably seek to vindicate a perceived legal entitlement.

## O'Danne Was the Prevailing Party at Trial

Archdale also asserts that O'Danne did not qualify as a "prevailing party" under RCW 4.84.185. This argument lacks merit. Our Supreme Court has explained that:

> In general, a prevailing party is one who receives an affirmative judgment in his or her favor. If neither wholly prevails, then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties.

Riss v. Angel, 131 Wn.2d 612, 633-34, 934 P.2d 669 (1997) (citations omitted). Applying this standard to the facts of the case, it is clear that O'Danne is the prevailing party.

The trial court's decision and order was a judgment granting O'Danne the right to sell the condo to a third party should Archdale fail to timely satisfy the underlying mortgage, the right to reimbursement of $1,493.84 in late mortgage payments and late fees owed by Archdale upon a third party sale, and the right to 25 percent of any surplus sale proceeds. Thus, contrary to Archdale's claims, O'Danne received affirmative judgment in her favor.

And, although the constructive trust also benefitted Archdale, the relief afforded by the trial court was entirely different from the relief requested in her complaint, i.e., that title to the condo be quieted immediately in her name, regardless of a simultaneous satisfaction of the mortgage. The relief granted was also substantially different from that requested by Archdale at trial, i.e., that title

12

to the condo be transferred to Archdale via quitclaim deed upon payment or satisfaction of the underlying mortgage, with no further contingencies. Thus, to the extent Archdale contends that she was the substantially prevailing party, she is mistaken.

## Conclusion

Because O'Danne was the prevailing party in this frivolous lawsuit, she was entitled to an award of attorney fees and costs pursuant to RCW 4.84.185. The trial court's entry of such an award was not error.[4]

## III.

O'Danne requests an award of attorney fees and costs on appeal, citing RAP 18.1 and RCW 4.84.185 as the basis for such an award. Because she was entitled to an award of attorney fees and costs in the trial court pursuant to RCW 4.84.185, we conclude that, as the prevailing party on appeal, she is entitled to recover reasonable attorney fees and costs, subject to compliance with RAP 18.1(d). See Xieng v. Peoples Nat. Bank of Washington, 63 Wn. App. 572, 587, 821 P.2d 520 (1991) (explaining the general principle in Washington that those entitled to an award of attorney fees below are also entitled to attorney fees on appeal).[5]

---

[4] In a cross-appeal, O'Danne assigns error to the trial court's denial of her motion to strike portions of Archdale's affidavit in opposition to O'Danne's motion for attorney fees and costs. Because the trial court granted O'Danne's substantive motion for attorney fees and costs in spite of the offending affidavit and because this award is affirmed on appeal, any error by the trial court was harmless. See Diaz v. State, 175 Wn.2d 457, 472, 285 P.3d 873 (2012) (explaining that an evidentiary ruling is not subject to reversal on appeal unless the error was prejudicial, i.e., it affected the outcome of trial).

[5] Archdale also contends that she is entitled to an award of attorney fees based on (1) RCW 4.84.330 and the attorney fees and costs provision of the deed of trust; (2) RAP 18.1 and RCW 4.84.185; and (3) the court's equity powers. In light of our disposition of her claims on appeal the request is denied.

*Affirm.*

WE CONCUR:

Spelman, C.J.

Trickey, J

Cox, J.